IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| JOSEPH V. ELAM<br>6112 Oakengate Way<br>Centreville, VA 20120,<br><br>   Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE<br>  UNIVERSITY OF THE<br>  DISTRICT OF COLUMBIA<br>4200 Connecticut Avenue, N.W.<br>Washington, D.C. 20008,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RECEIVED
Civil Clerk's Office
MAY 1 2 2005
Superior Court of the
District of Columbia
Washington, D.C.

Civil Action No._____

05-0003651

**JURY TRIAL REQUESTED**

**COMPLAINT FOR RACE, COLOR,
<u>NATIONAL ORIGIN, AND AGE DISCRIMINATION</u>**

1.  Plaintiff Joseph V. Elam ("Mr. Elam" or "Plaintiff"), by and through undersigned counsel, hereby files this civil action against the Board of Trustees of the University of the District of Columbia ("UDC" or "Defendant"), pursuant to the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 <u>et seq.</u> (2001) *formerly* D.C. Code § 1-2510 <u>et seq.</u> (1981), U.S. Const. Amend. XIV, and 42 U.S.C. § 1983, seeking relief for harms caused to Plaintiff by Defendant's unlawful and intentional discrimination. Defendant discriminated against Mr. Elam, who is ethnically Asian Indian, born in India, a naturalized U.S. citizen, and 65 years of age, by

discriminatorily denying him a promotion to the rank of Full Professor and creating a hostile work environment. Plaintiff seeks all remedies available under the D.C. Human Rights Act and 42 U.S.C. § 1983, including but not limited to back pay and back benefits, compensatory and punitive damages, and costs and expenses, including reasonable attorney fees at prevailing market (Laffey) rates, in order to remedy fully the unlawful acts of Defendant.

### Parties

2. Plaintiff Joseph V. Elam, an Asian Indian born in India, became a U.S. citizen in on February 22, 1977 (Certificate of Naturalization Number 9834528). He is 65 years of age (DOB: 12/1/1939). He has worked for Defendant or its predecessor since 1971, and has held the position of Associate Professor since 1982. He resides at 6112 Oakengate Way, Centreville, VA 20120.

3. The Defendant, the Board of Trustees of the University of the District of Columbia ("UDC" or "University"), is Mr. Elam's current employer, and an independent Agency of the District of Columbia. See D.C. Code § 38-1202.01. Defendant is located at 4200 Connecticut Avenue, N.W., Washington, DC 20008.

### Jurisdiction and Venue

4. This Court has jurisdiction over this Complaint pursuant to DCHRA, D.C. Code §§ 2-1402.11(a)(1) and 2-1403.16 *formerly* D.C. Code § 1-2525 (1981). Venue is proper in this Court because the Defendant is located in the District of Columbia, and all relevant actions took place in the District of Columbia.

### Facts

5. Plaintiff Joseph V. Elam holds a Bachelor's degree from Madras University in India (1958), a Master's degree from Kerala University in India (1962), and a Master's degree from the Medill School of Journalism at Northwestern University in Illinois (1967). Mr. Elam has provided Defendant exceptional service and loyalty for over 34 years. In fact, he has singlehandedly taught all of the core journalism courses since 1982.

6. Defendant, a post-secondary educational institution, is an independent Agency of the District of Columbia and offers various degrees at the certificate, associate, baccalaureate, and graduate levels.

7. Mr. Elam has been contributing his excellent services to Defendant since 1968, when as an adjunct faculty member in

3

Defendant's Lorton Prison College Program, he taught college level courses in English composition, critical writing, creative writing, and journalism. He continued as an adjunct faculty member in this program until 1994.

8. From 1971 to 1976, he was the Media Specialist and Media Relations Coordinator for Federal City College, a predecessor of Defendant. Through these positions, he promoted Defendant and Defendant's Office of the President during an era where there was much division between the administration and a factional faculty.

9. In 1976, Mr. Elam joined Defendant's Department of Mass Media[1] ("Department") as an Assistant Professor of Journalism, and then in 1982 he was promoted to the rank of Associate Professor.[2] He is the only Asian Indian in the

---

[1] The Department's name is now Department of Mass Media, Visual and Performing Arts. It is located in the College of Arts and Sciences.

[2] He applied for promotion to the rank of Associate Professor in 1979, but was denied allegedly on the grounds of his race. He submitted 70 pounds of his newspaper and magazine articles, printed programs on journalism and public relations workshops he organized at UDC, and awards he received. These materials demonstrated his professional growth, scholarship, teaching, university and community services. The promotion committee reconvened and reviewed all applicants for promotion. Ultimately, in 1982, he received the deserved promotion to Associate Professor along with retroactive pay and benefits

Department. He has repeatedly earned "Excellent" in his performance evaluations, and he is well-respected among his colleagues, students, and the community at-large. In addition, for the years recorded, Mr. Elam achieved the rating of "Outstanding" for classroom performance as both a teacher and mentor to his students.

10. In an external review conducted by two Howard University Mass Media and Education Professors in 2001, Mr. Elam was described as performing "a Herculean job" with the limited amount of resources and faculty at Defendant.

11. Mr. Elam introduced almost all of the core courses in journalism at UDC and helped to develop the curriculum. He maintains an active presence in the D.C. community advocating on behalf of African Americans through various capacities including his position as Director of Public Relations for the United Black Fund. Through these relationships, he is able to promote UDC throughout the community, bringing a steady stream of talented individuals to interact with the University and the students.

12. Since 1978, he has been the head of the journalism

---

effective 1979.

program, holding the title of Journalism Area Coordinator.[3] As Journalism Area Coordinator, he instituted the annual UDC-Capital Press Club journalism and public relations workshops at UDC. These workshops bring prominent journalists, editors, anchorpersons, photographers, publishers, and public relations practitioners to the University. Moreover, because of Mr. Elam's personal and professional connections, these individuals all appear pro bono.

13. Mr. Elam tirelessly advocates for his students by expanding their horizons, taking a keen interest in preparing them for a future in journalism and public relations after graduation. From 1978 until 2000, he was the faculty editor/advisor of Free Voice, the student newspaper. In 1999, Mr. Elam took the lead in establishing the UDC Journalism Club. The club sponsors educational forums and journalism and public relations workshops every semester. Much like the UDC-Capital Press Club yearly workshops, these more intimate events bring in experts from many fields, putting a spotlight on UDC and allowing students to interact and make contacts with important outside

---

[3] The Department of Mass Media, Visual and Performing Arts consists of seven programs, and each program has a coordinator.

6

figures.

14. As a result of the various programs that Mr. Elam developed and continues to run, journalism students are placed in internships every semester, in the following publications: <u>Washington Afro-American</u>, <u>Washington Informer</u>, <u>New Washington Sun</u>, <u>Capital Spotlight</u>, <u>News Dimension</u>, and <u>Washington Observer</u>; radio stations: WOL, WYCB, WHUR, and WPFW; television stations: Channels 4, 5, 8, and 9; and non-profit organizations: United Black Fund, Sasha Bruce House, African Heritage Dancers and Drummers, Rap Inc., and Ketchum International PR.

15. Mr. Elam's activities have a positive impact on UDC and its students as well as a positive impact on the community as a whole. For example, Mr. Elam designed and introduced the "Literacy Through Journalism" ("LTJ") program to a fifth grade class at the Mary Terrell Elementary School in Anacostia. The concept of LTJ was to motivate students by reading positive stories of African American athletes, singers, actors, and other distinguished professionals in African American periodicals. Mr. Elam authored the manual and trained his journalism students to teach the course to elementary school children. This pilot project, with the proper funding, can be easily adapted to elementary schools nationwide. In 1992, Mr. Elam, in

collaboration with Defendant's History Department, revived Defendant's Black History Celebrations. He also instituted the Living Legend Award Program in 1993, which honors African Americans who have made special contributions to this country. Despite Mr. Elam's advocacy and dedication, not all of these programs survived.

16. Mr. Elam participates in active service with Defendant through committee membership. He is currently a member, and has chaired, the Department of Mass Media, Visual and Performing Arts Evaluation and Promotion Committee three times. He serves as a member of the University Senate and currently serves as the Chairman of the Senate Committee on Student Affairs.

### Failure to Promote

17. In the Spring of 2003, Mr. Elam applied for promotion to the rank of Full Professor. Included in his application was a 29-page list of his professional work, listing the following: course syllabi, instructional materials, awards, scholarship, periodical articles, editorships, press releases, and community service. He had strong recommendations from within the Department of Mass Media, Visual and Performing Arts. Professor Harry Van Buren, Chairperson of the Departmental Evaluation and Promotion Committee, "strongly recommended" Mr. Elam for

8

promotion to Full Professor in the departmental review. Professor Yvonne Carter, Chairperson for the entire Department, "strongly recommended" Mr. Elam for promotion and stated that "Professor Elam has been a productive and involved faculty member, mentor and a dedicated teacher."

18. On August 18, 2003, Mr. Elam received notification from Janet Burton, Chairperson of the College of Arts and Sciences Promotion Committee, that the Committee "strongly recommends" him for promotion. The Committee consists of 13 departments and their Departmental Evaluation and Promotion Committee Chairpersons.

19. On May 13, 2004, Mr. Elam received a letter from Wilhelmina Reuben-Cooke (African American), Provost and Vice President of Academic Affairs, not recommending him for promotion. The letter also stated that Dr. Rachel Petty (African American), Dean of the College of Arts and Sciences, did not recommend him for promotion either. Defendant never provided Mr. Elam with Dr. Petty's rationale for his nonpromotion. This omission is in direct violation of Article XVI, Section A, Paragraph 7 of the Master Agreement between UDC and the UDC Faculty Association/NEA.

20. Ms. Reuben-Cooke stated that while Mr. Elam's

9

accomplishments in the areas of job performance and service are commendable, he did not provide enough evidence of scholarship and research. No reference was made to the 29-page list of his works and accomplishments.

21. Attached to the May 13, 2004 letter was a memorandum listing three Associate Professors that Ms. Reuben-Cooke recommended for promotion to the rank of Full Professor. Two of these professors, Sheila Harmon-Martin and Nelda Ormond, are African American. The third professor, Abiose Adebayo, on information and belief, is African (status of citizenship is not known at the time of this Complaint). On information and belief, all three of the professors who were recommended for promotion, received promotions. In addition, all three of these professors are substantially younger than Mr. Elam.

22. Mr. Elam appealed the denial of promotion to Full Professor to Dr. William Pollard, President of UDC, but on July 19, 2004, President Pollard notified Mr. Elam, by letter, that he would not be promoted.

### Hostile Work Environment

23. Mr. Elam has suffered from discrimination throughout his employment by Defendant. For instance, it took nearly two years for him to successfully contest the Defendant's

discriminatory failure to promote him to the rank of Associate Professor from an Assistant Professor in the late 1970s and early 1980s.

24. Beginning in 1998, Defendant began to diminish Mr. Elam's professional responsibilities and disparage his character. Dr. Beverly Anderson (African American), former Vice President for Academic Affairs, characterized Mr. Elam as a "maverick" with a hidden agenda to a group of Mr. Elam's students. Mr. Terry Prescott (African American), Assistant to the Provost and Vice President, was also present at this meeting. On a separate occasion, Dr. Anderson also accused Mr. Elam of "misleading and misguiding" his students. Ultimately, she removed Mr. Elam from his faculty editor position on the <u>Free Voice</u>.

25. Each full-time faculty member must have 64 professional units a year encompassing the fall and spring semesters. A normal lecture class is 8.5 professional units. As a result of his removal as faculty editor for the <u>Free Voice</u>, Mr. Elam is no longer able to teach the Journalism Lab courses (Lab I & II). In addition, he has had other courses changed and diminished in their number of professional units. Since there are fewer courses available for Mr. Elam to meet his

11

professional obligations, and some of the available courses have fewer units than in the past, he is forced to prepare for and teach four full courses each semester. By contrast, every other full-time faculty member is required to teach a total of only six courses over both semesters.

26. Mr. Elam has been denied the key to the Departmental Office since 1994. He has asked for a key four times since June of 2004, and as recently as Thursday, May 5, 2005, but has still not been provided a key. Since Mr. Elam does not have an office key, he is unable to access his mailbox, the duplicating machine, and computers for student advising during off-hours. On information and belief, all of the other 17 professors in his Department have keys.

27. The Journalism Lab and Mr. Elam's office have been continuously moved without ever consulting Mr. Elam for his thoughts and ideas on how to improve or expand the Journalism Program. The most recent move occurred when Mr. Elam was on sick leave for cancer treatment during the fall semester of 2004. Currently, the Lab is located in a windowless basement and requires an industrial fan to cool the room even in the middle of winter. The Lab becomes extremely hot and humid when it is full, and as an insulin-dependent diabetic, Mr. Elam has

12

great difficulties with excessive heat and highly humid air. He has repeatedly requested to have the Journalism Lab relocated to a larger, ventilated area, most recently on May 5, 2005, but it has been made clear to Mr. Elam that the Lab will not be relocated.

28. Mr. Elam's office is formed by adjustable walls in a room shared with three other faculty members, but his space is the smallest. In addition, only his space is irregularly shaped (as opposed to the other faculty who have rectangular spaces), indicating once again that Defendant considers Mr. Elam to be different and "lesser" than other faculty.

29. Despite repeated requests from Mr. Elam, Defendant has not granted him any release time for training with the new Departmental computers and technology introduced since 2001. For example, he has been denied release time for training with Quark Express software, which is very important for newspaper layouts and production.

30. The Journalism program suffers from outdated and inadequate technology and equipment. Mr. Elam has been excluded from the Departmental budgeting process since 1994, except for infrequent last minute minor oral assessments. As a result of Mr. Elam's exclusion from this vital process, the Journalism

program suffers because he is prevented from effectively advocating on behalf of the Program.  The substandard equipment and conditions, and the fact that other Coordinators in the Department are involved in the budgeting process, casts a negative reflection of Mr. Elam as the Journalism Area Coordinator.  In addition, he suffered additional humiliation when Defendant would periodically deny funding for the Journalism Lab's newspaper, Free Voice, when he was the faculty editor.

## Causes of Action

### Cause of Action 1 - Race, Color, and/or National Origin Discrimination

31.  Plaintiff incorporates by reference the allegations stated in paragraphs 1-30 of this Complaint.  Plaintiff is an Asian Indian, India-born naturalized U.S. citizen, and therefore a member of several protected classes.  Defendant's actions discriminated against Plaintiff by reason of his race, color, and/or national origin in violation of the DCHRA, D.C. Code §§ 2-1401 et seq.

32  Plaintiff is highly qualified for the rank of Full Professor.  Both his Departmental Chair and the Chair of the Promotion and Evaluation Committee, strongly recommended him for

the promotion. He has over 34 years of exemplary service to Defendant, and a 29-page list of works and accomplishments which demonstrate that he has produced an ample amount of scholarly and professional work. He was therefore meeting and surpassing all legitimate expectations of his employer.

33. Plaintiff was subjected to an adverse employment action when he was denied a promotion to the rank of Full Professor for the 2004-2005 Academic Year. Plaintiff's African American and African colleagues were not treated in this fashion, and Defendant did not select Plaintiff for promotion while selecting only African American and African personnel for promotion to the rank of Full Professor.

**Cause of Action 2 - Hostile Work Environment**

34. Plaintiff incorporates by reference the allegations stated in paragraphs 1-33 of this Complaint. Plaintiff is an Asian Indian, India-born naturalized U.S. citizen, and therefore a member of several protected classes. Defendant's actions discriminated against Plaintiff by reason of his race, color, and/or national origin in violation of the DCHRA, D.C. Code §§ 2-1401 et seq.

35. Plaintiff is continuously subjected to abusive treatment and unwelcome harassment based upon his race, color,

15

and/or national origin. The hostile work environment created by Defendant is sufficiently severe or pervasive to affect the terms, conditions, and privileges of Plaintiff's employment and created an abusive work environment. Defendant denies him many of the privileges that are routinely granted to other faculty members and has gradually eroded his professional responsibilities in the recent past. Mr. Elam suffers hardship and humiliation by the inhospitable location, outdated and inadequate technology, and continual arbitrary relocations of the Journalism Lab and his office. The uncomfortable working space is compounded by the fact that as a diabetic, the space is harmful to Mr. Elam's health. He is denied meaningful input into the Departmental budget, and is also denied the same access to his office that every other professor in the Department has. Lastly, he has been denied release time for important software training.

36. Mr. Elam has continuously brought his substandard treatment to the attention of Defendant, but all of his efforts to have Defendant cease such treatment of him been ignored.

### Cause of Action 3 - Age Discrimination

37. Plaintiff incorporates by reference the allegations stated in paragraphs 1-36 of this Complaint. Plaintiff is 65

years of age, and therefore a member of a protected class. Defendant's actions discriminated against Plaintiff by reason of his age in violation of the DCHRA, D.C. Code §§ 2-1401 et seq.

38. Plaintiff was subjected to an adverse employment action when he was denied a promotion to the rank of Full Professor for the 2004-2005 Academic Year. Plaintiff's substantially younger colleagues were not treated in this fashion, and Defendant did not select Plaintiff for promotion while selecting only substantially younger personnel for promotion to Full Professor.

**Cause of Action 4 - Discrimination in Violation of the Equal Protection Clause of the 14th Amendment, pursuant to 42 U.S.C. § 1983**

39. Plaintiff incorporates by reference the allegations stated in paragraphs 1-40 of this Complaint. Plaintiff is an Asian Indian, India-born naturalized U.S. citizen, 65 years of age, and therefore a member of several protected classes. Defendant's actions discriminated against Plaintiff by reason of his race, color, national origin and/or age in violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, enforceable via 42 U.S.C. § 1983.

40. Mr. Elam has been a public employee at all times

17

relevant to this Complaint.

41. Mr. Elam's race, color, national origin, and age are a substantial or motivating reason for Defendant's failure to promote Mr. Elam as well as creating an unrelenting hostile work environment for him.

42. Defendant's actions committed under color of D.C. law against Mr. Elam are malicious, willful, and/or in conscious disregard of his civil rights. Defendant knows or should know that these improper actions are against clearly established law, but engaged in them anyway.

### Relief Requested

43. Plaintiff requests the following relief:

   A. Retroactive promotion to the rank of Full Professor, effective for the 2004-2005 Academic Year;

   B. Full back pay and benefits from the beginning of the 2004-2005 Academic Year to the date of decision in this case;

   C. Maximum compensatory damages allowed by law to Mr. Elam for injuries to his employment, career, reputation, and health related to Defendant's unlawful race, color, and national origin

discrimination;

D. Punitive damages in an amount deemed appropriate by the jury for Defendant's willful, wanton, and reckless conduct toward Mr. Elam;

E. The reasonable costs and expenses, including attorney fees at prevailing market (<u>Laffey</u>) rates, of bringing this action; and

F. Such other relief as the Court determines is just and appropriate.

### Jury Trial

40. Plaintiff requests a trial by jury (6-person) on all issues that are triable by jury.

*Joseph D. Gebhardt*
JOSEPH D. GEBHARDT
    (DC Bar No. 113894)
JARED S. GROSS
    (Admitted in DC and OH)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

May 12, 2005                    Attorneys for Plaintiff