```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

    --------------------------x
    JOSEPH V. ELAM,           :
                              :
            Plaintiff,        :
                              :
        v.                    :
                              : CA-05-1557
    BOARD OF TRUSTEES OF      :
    THE UNIVERSITY OF THE     :
    DISTRICT OF COLUMBIA,     :
                              :
            Defendant.        :
    --------------------------x
```

                                        Washington, D.C.

                                    Thursday, May 18, 2006

Deposition of

                WILLIAM LAWRENCE POLLARD

a witness, called for examination by counsel for

Plaintiff pursuant to notice and agreement of

counsel, beginning at approximately 11:07 a.m. at

Gebhardt and Associates LLP, 1101 17th Street NW,

Washington, D.C., before Jon Hundley, notary public

in and for the District of Columbia, when were

present on behalf of the respective parties:

57

```
 1       Q    You didn't take an opportunity to
 2  go and look to determine specifically what
 3  the department's recommendation was?
 4       A    I don't recall doing so.
 5       Q    I'm assuming the same would be for
 6  the college-wide committee?
 7       A    That would be correct.
 8       Q    You didn't look to see specifically
 9  what they would have recommended.
10       A    No.
11       Q    You stated a moment ago that your
12  decision was based in part on your
13  interpretation of scholarship, is that
14  correct?
15       A    Yes.
16       Q    Could you expound on that and tell
17  us, first of all, what your definition of
18  scholarship is?
19       A    My definition of scholarship is
20  dominated by a view that what one writes and
21  has published has undergone the scrutiny of
22  peers in one's profession, and that the
```

58

```
 1   articles have appeared in refereed journals
 2   or their books that may have been reviewed by
 3   colleagues.
 4            If I am looking at a -- as a dean,
 5   if I'm looking at a promotion and tenure
 6   application and that person is -- and I'm
 7   most familiar with social work -- if that
 8   person has not published in Social Work, or
 9   Social Service Review or any number of
10   publications that are refereed, then I'm not
11   ---- to seriously consider the scholarship.
12   I make a distinction between the work of
13   colleagues who may publish widely in
14   newspapers, perhaps writing editorials and
15   letters to the editor.  I separate that out
16   from what might appear in a refereed journal
17   or publication.
18       Q    Just so I can make sure I
19   understood you, was that a refereed journal?
20       A    Uh-huh.
21       Q    You just made the statement that a
22   news article or a note to the editor, that
```

59

```
 1    you would separate that out.
 2        A    Uh-huh.
 3        Q    What's the explanation for that,
 4    for separating that out?
 5        A    The separating out speaks solely to
 6    the degree of weight assigned to that
 7    particular piece.
 8        Q    What weight do you attribute to
 9    either of those, first of all, the published
10    articles in a journal, and then to the news
11    article.
12        A    Well, clearly the journal article,
13    refereed journal article, would receive the
14    greater weight.  Books would probably receive
15    a secondary weight, and probably refereed
16    papers presented at regional or national
17    conferences would receive considerable
18    weight, probably not as high as a published
19    article, but certainly would be -- would
20    receive a great deal of attention and
21    concern.
22        Q    Your definition for scholarship and
```

                                             64

 1    thing, yeah.
 2        Q    This opinion that you've just
 3    expressed, is this the opinion that you would
 4    have applied in Mr. Elam's case?  In looking
 5    at his application, looking at whatever you
 6    reviewed to determine whether he should have
 7    been promoted, is this the working definition
 8    that you applied?
 9        A    Probably, yes.
10        Q    You state "probably."  Do you have
11    different working definitions that you use?
12        A    No.  If you recall, I stated
13    earlier that what I took under great
14    consideration in making my decision were the
15    opinions of the dean and the provost.
16        Q    Yes, that's correct.
17        A    And taking those opinions into
18    consideration and considering what I've just
19    shared with you of my definition of
20    scholarship and service, I had no evidence to
21    say that I should or should not overrule or
22    should overrule their decision.

                    BETA COURT REPORTING
                    www.betareporting.com
          202-464-2400                    800-522-2382

77

```
1      Q    Have you had a chance to review it?
2      A    Yes.
3      Q    Have you seen that letter before?
4      A    Yes.
5      Q    What is that letter?
6      A    This is a letter to me dated June
7    20, 2004, recapping qualification and
8    accomplishments for my information.
9      Q    Who was the letter from?
10     A    Professor Elam, sorry.
11          MS. RAINEY:  That's fine.  Exhibit
12   3.
13          (Deposition Exhibit No. 3 was marked
14          for identification.)
15          THE WITNESS:  I have here a letter
16   dated July 19, 2004, from me, William
17   Pollard, to Professor Elam, indicating that I
18   was supporting the decision rendered by the
19   provost and dean denying him promotion.
20          BY MS. RAINEY:
21     Q    To whom is that letter addressed?
22     A    It is addressed to Professor Elam.
```

BETA COURT REPORTING
www.betareporting.com
202-464-2400                    800-522-2382

78

```
 1        Q    In that letter do you state reasons
 2   for denying the promotion?
 3        A    Yes.
 4        Q    What are those reasons that you
 5   state?
 6        A    The reasons set forth in the
 7   provost's and by the president of academic
 8   affairs' letter dated May 13, 2004.
 9        Q    Did you give any independent
10   reasons other than reasons that are noted in
11   the provost's and the dean's --
12        A    No.
13             (Deposition Exhibit No. 4 was marked
14             for identification.)
15        BY MS. RAINEY:
16        Q    If you'll review that letter -- I
17   want to particularly call your attention to
18   the second paragraph of that letter.  Near
19   the end where specific reasons for
20   non-promotion are set out.
21        A    I've reviewed a letter from the
22   provost Wilhelmina Reuben-Cooke, to Professor
```

BETA COURT REPORTING
www.betareporting.com
202-464-2400                    800-522-2382

                                              79

 1    Elam denying his request for promotion, and I
 2    was asked to review specifically that
 3    paragraph, the second paragraph of the
 4    letter, indicating that his perceived
 5    weakness in scholarship and research, and he
 6    was invited to strengthen his performance in
 7    that area.
 8         Q    What's the date of that letter?
 9         A    May 13, 2004.
10         Q    Am I correct in that this
11    application process is for the '02-'03
12    academic promotion year?  Does that sound
13    accurate?
14         A    I'm not sure.
15              (Deposition Exhibit No. 5 was marked
16              for identification.)
17              BY MS. RAINEY:
18         Q    I ask you to review the entire
19    document and specifically focus on the area
20    where the individuals that were promoted are
21    listed.
22         A    I have been asked to review, and

                    BETA COURT REPORTING
                     www.betareporting.com
          202-464-2400                    800-522-2382