UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH V. ELAM,                          )
                                         )
Plaintiff,                               )
                                         )
      v.                                 )   Civil Action No. 05-1557 (JBD)
                                         )
BOARD OF TRUSTEES OF                     )
THE UNIVERSITY                           )
OF THE DISTRICT OF COLUMBIA,             )
                                         )
            Defendant.                   )

**DISPUTED FACTS**

1.    Disputed. Plaintiff joined the University of the District of
      Columbia (UDC) as a Media Relations Specialist in October
      1971. He became an Assistant Professor in the Communicative
      Arts Department (now called the Department of Mass Media,
      Visual, and Performing Arts) in 1976.  Amended Compl.

2.    Disputed in part. The University did promote the plaintiff,
      but only after he filed an EEO Complaint of discrimination.
      The University finally promoted him after an investigation
      in 1982, by signing a conciliation agreement.  The
      retroactive promotion was effective from 1980, with back-pay
      and benefits. Exh. 5

3.    Disputed in part. The Plaintiff has two Master's degrees,
      one in Journalism from the Medill School of Journalism at

Northwestern University (June, 1967), and the other in

English Language and Literature from the University of

Kerala, India in 1962. Furthermore, he has an undergraduate

degree from the University of Madras in Economics, with a

minor in history and political science. Plaintiff has also

completed first year of law at the Maharajah's Law College

in Kerala, India. Also, earned 15 graduate credits toward

Ph.d in English from Howard University. Amended Compl.

4.    Disputed in part. It is not true that the plaintiff has

never entered a Ph.D. program. He may not have entered a

Ph.D. program in Journalism, but has done so in English at

the Howard University in 1972. He earned 15 hours of work,

with high grades. Howard University did not offer a Ph.D. in

Journalism at the time. The UDC recognized the plaintiff's

graduate credits as continuing education, or professional

development. The terminal degree for the Department of Mass

Media, Visual, and Performing Arts is a  Master's Degree in

his field of specialization and teaching. Exh. 1.

5.    Disputed. Plaintiff became the Journalism Area Coordinator

in 1980 when Professor Daphne Northington took sabbatical

leave and then resigned in 1982. Exh. 7.

6.    Disputed in part. Plaintiff was the only full time

journalism faculty in the Department since the removal of

Professor Northington in 1982. This resulted in the

plaintiff having to teach Professor Northington's portion of

courses as well. His workload increased manifold, since he

was not only handling twice the number of courses he should

have been, but was also publishing the journalism newspaper,

Free Voice. Id. at 43-44.

7.   Undisputed.

8.   Undisputed.

9.   Undisputed.

10.  Undisputed.

11.  Undisputed. Exh. 4.

12.  Undisputed.

13.  Undisputed.

14.  Undisputed.

15.  Undisputed.

16.  Disputed. During the 2002-2003 promotion cycle, the College

Promotions Committee (CPC) reviewed seven applications, plus

an application from the previous cycle of 2001-2002.

Associate Professor Nelda Ormond's application had been

unauthorizedly held back by Dean Rachel Petty from the 2001-

2002 cycle to be included in the next cycle of 2002-2003.

This was contrary to the 4th and 5th Master Agree-

ment guidelines. Exh. 14.

17.  Undisputed.

18.  Disputed. The College Committee assigned points based on

     qualitative and quantitative analysis of applicants'

     accomplishments with an objective mathematical scoring

     system and a critical analytical approach for ranking. Exh.

     14.

19.  Disputed. The ranking was not solely based on the scores

     assigned; it was based on the collective academic wisdom of

     11 chairs of the Department Committees in the College of

     Arts and Sciences with an objective, mathematical scoring

     system and a critical, analytical review for ranking. Id.

20.  Disputed.

21.  Undisputed.

22.  Undisputed.

23.  Disputed. Plaintiff created the "Literacy through

     Journalism" project for the Mary Terrell Elementary School.

     [From the handout that Elam dropped by yesterday: Dean Petty

     singled out the department of 'Graphic Communication and

     Graphic Design' as one which revised its curriculum despite

     budgetary constraints. However, that is an unfair comparison

     because the program had five full time faculty members, in

     addition to some adjunct faculty members and consultants who

     were assigned especially by Dean Petty herself to revise the

curriculum].

The plaintiff has kept abreast of the legal and ethical issues since his in-class assignments required using the Washington Post, Public Journalism, and Community Journalism. Exh. 1.

24. Disputed. As the Journalism Program Coordinator, the plaintiff was not solely responsible for updating the journalism curriculum. It was the responsibility of the Dean and the Department Chair to update the journalism courses at UDC, taking budgetary constraints into account. Professor Elam had recommended the upgrading of the journalism program, as of 1990 which fell on deaf ears. Exh. 7, 24-37.


25. Disputed. Professor Elam had pleaded with the Department chair as early as 1995 to upgrade and revamp the journalism program, which was ignored by the Chair and the Dean. Exh. 19.

26. Disputed. It was the journalism Coordinator, Professor Elam, who stressed the need for "substantial upgrading and revamping" of the journalism curriculum", not the other way. The Plaintiff concurred with the upgrading of the curriculum which he has been fighting for since 1990. Exh. 19.

27.   Disputed. The Plaintiff  advocated  the need for

      "substantial  upgrading and revamping" of the journalism

      curriculum  which he recommended as early as 1994 when

      Professor Yvonne Carter became the Chairman of the

      Department. Exh. 19.

28.   Disputed. The Plaintiff had submitted the same proposal as

      early as 1993 recognizing the need to revise the journalism

      curriculum to the then Department Chair. But it was ignored.

      Exh. 19.

29.   Disputed. Plaintiff was already briefed by the Chair that

      the proposed new courses are subject to the constraints of

      the budgetary limitations. Exh. 19.

30.   Disputed. The course was proposed by using current videos on

      the ethics issues in journalism, because from two decades of

      personal experience, Professor Elam had learned that the

      students were not interested in the theory of ethics. This

      assumption was proved when the ethics course was offered in

      the Spring of 2007; no one registered for the course. So the

      Department had to ditch the course. Exh. 19.

31.   Undisputed.

32.   Disputed. The Plaintiff was not at all responsible unless he

      got the approval from the Department Chair and the Dean

      because of Budgetary Constraints.  The Plaintiff was not  at

all developing a full-blown syllabus, which requires  weeks

of consulting with other journalism schools and examining

appropriate books for the course for students who need

remedial education in English, math and science. Exh. 19.

33.  Disputed. The Plaintiff did submit a sample syllabus. Exh.

19.

34.  Disputed.

35.  Disputed. The Plaintiff did submit a sample syllabus for the

computer —assisted  reporting course prepared by adjunct

faculty Prof. Harvey  Johnson. Exh. 19.

36.  Disputed. The Plaintiff did not get a  positive response

from the Department Chair to proceed with the proposed

courses. Hence he couldn't submit full-blown syllabi  which

require so many hours and weeks of work to prepare for

students who need remedial education in English, math ,

science and other areas.

Whereas the Programs like Music had 9 full time faculty members

plus  several adjuncts; Art had 6 full time faculty members with

several adjuncts at one time. Although journalism had one full

time adjunct and a part time adjunct, the Journalism Coordinator

could not enlist their support since under the Master Agreement,

the university cannot charge the adjuncts to do administrative

work. Exh. 19.

37. Disputed. Professor Elam had submitted proposals to upgrade

    the curriculum to the chairs. But the paucity of response

    from the Chair and the Dean, who always brandished the

    argument of "budgetary constraints" and "not enough money"

    Professor Elam abstained from submitting the proposal to the

    Curriculum Committee.  Still in 2001, he submitted a

    proposal to the Chair to upgrade the  journalism curriculum

    by adding 8 new courses which fell on deaf years. Id.

38. Disputed. Prof Elam's extensive portfolio  submitted along

    with the promotion  application contains more evidence of

    documented scholarship, professional activity and

    professional development than all the 8 applicants,

    particularly the portfolios of the three candidates

    recommended and promoted to the rank of  full professorship.

    Exh. 1.

39. Disputed. All  Professor Elam's published articles   in

    Newspapers and Magazines since 1971 —thru 2007   are

    voluntary contributions. Even his editorship of the two

    magazines, METRO MAGAZINE and AMERICAN MAGAZINE   from 1982

    thru 1986 was unpaid voluntary work. Exh. 1, 2, 3.

40. Disputed. Professor Elam's LITERACY THROUGH JOURNALISM (LTJ)

    Project  is an example of original research starting with

    the hypothesis -- that  reading , writing , and public

speaking skills of  minority students in elementary thru

high school—can be improved by using minority publications

in class rooms. The pilot project of LTJ was implemented and

proved the hypothesis true. As a result Mary Terrell's

Principal, presented Associate Professor Elam the

Outstanding Teacher Award during the graduation of 19

students in the LTJ Program. Elam wrote the manual for the

LTJ Project.  Again, it fits with the mission of the

university. Exh. 2.

41.   Disputed. Dean Petty uses the term "critical acclaim" when

she is describing the criteria for assessing scholarship.

She does not say that "Plaintiff has not received any awards

or critical acclaim for his writings by professional writers

or organizations in his field." Professor Elam has received

numerous awards for his journalistic and public relations

writings from many organizations. In fact, all the awards

Elam received are for the end product of journalistic

writing. In fact none of the promoted candidates  have

received awards and recognitions to the extent Professor

Elam has won.

The republication of Elam's article  on Duke Ellington in

the Kingmaker Magzine as a legacy feature is the highest honor

and recognition  a journalist can covet from a National Black

Legacy Magazine. Exh. 14.

42.  Disputed. Exh. 1, 2, 3.

43.  Disputed.

44.  Undisputed.

45.  Disputed. Provost Reuben —Cooke  rubber-stamped Dean Petty's

     recommendation. Exh. 16.

46.  Disputed. Again, Provost Reuben-Cooke is  reviewing through

     the prejudiced or jaundiced eyes of Dean Petty. Exh. 16.

47.  Disputed in part. The Plaintiff has presented  and

     participated in annual Journalism workshops and seminars.

     He presented  at the university for several years. Further

     his journalism classes begin  with discussions on the issues

     in journalism  and coverage anomalies of the current  Press.

     Exh. 1, 2, 3.


48. Disputed in part. Professor Elam, in his appeal, requested to

     President Pollard to review his application and portfolio in

     comparison with the portfolios of  the candidates promoted.

     Exh. 17.


49. Undisputed.

50.  Undisputed .

51.  Disputed. In his deposition, President Pollard  found

"Plaintiff's application  lacking  proof of scholarly  works
that have "undergone the scrutiny of peers  in one's
profession."  Exh. 16.

52. Disputed.  Exh. 13.

53. Disputed.

54. Disputed.

55. Disputed.

56. Undisputed.

57. Undisputed.

58. Undisputed.

59. Undisputed.

60. Undisputed.

61. Disputed.  Exh. 8.

62. Undisputed.

63. Undisputed.

64. Disputed.  Exh. 8.

65. Undisputed.

66. Disputed.  Exh. 14.

67. Disputed.  Exh. 8.

68. Disputed.

69. Undisputed.

70. Undisputed.

71. Undisputed.

72. Undisputed.

73. Undisputed.

74. Undisputed.

75. Undisputed.

76. Undisputed.

77. Undisputed.

78. Undisputed.

79. Undisputed.

80. Undisputed.

81. Undisputed.

82. Undisputed.

83. Undisputed.

84. Undisputed.

85. Disputed.   Exh. 7.

86. Disputed.   Exh. 7.

87. Disputed.   Exh. 7.

88. Disputed.   Exh. 7.

89. Disputed.   Exh. 7.

90. Disputed.   Exh. 7.

91. Disputed.   Exh. 7.

92. Disputed.   Exh. 7.

93. Disputed.   Exh. 7.

94. Disputed.   Exh. 7.

95. Disputed.   Exh. 7.

96. Disputed.   Exh. 7.

97. Disputed.   Id.

98. Disputed.   Id.

99. Disputed.   Id.

100. Undisputed.

101.   Disputed.   Exh. 7.

102.   Disputed.   Id.

103.   Disputed.   Id.

104.   Disputed.   Id.

105.   Disputed.   Id.

106.   Disputed.   Id.

107.   Disputed.   Id.

108.   Disputed.   Id.

109.   Disputed.   Id.

110.   Disputed.   Id.

111.   Disputed.   Id.

112.   Disputed.   Id.

113.   Disputed.   Id.

114.   Disputed.   Id.

115.   Disputed.   Id.

116.   Disputed.   Id.

117.  Disputed.  Id.

118.  Disputed.  Id.

119.  Disputed.  Id.

120.  Disputed.  Id.

121.  Disputed.  Id.

122.  Disputed.  Id.

123.  Disputed.  Id.

124.  Disputed.  Id.

125.  Disputed.  Id.