UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH V. ELAM, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>BOARD OF TRUSTEES OF THE )<br>UNIVERSITY OF THE DISTRICT OF )<br>COLUMBIA, )<br>)<br>    Defendant. )<br>_____ ) | Civil Action No. 05-1557 (JDB) |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT

I.  ARGUMENT

   A.  Plaintiff Cannot Establish a Prima Facie Case That He Was Denied Promotion
       Because of His Asian Indian Origin.

   Plaintiff fails to establish a prima facie case of discrimination based on his Asian Indian origin. Defendant had argued that plaintiff failed to raise an inference of discrimination because he was not qualified for the promotion and because similarly situated individuals were not treated differently. Plaintiff responds that he need not show that similarly situated individuals were treated differently. George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005). Instead, to raise a prima facie inference of discrimination, plaintiff's opposition only attempts to show that he was qualified for promotion. Id. (Opp. 18). Defendant agrees that, for purposes of a prima facie case, it is not always necessary to show disparate treatment of similarly situated individuals. As shown below, though, plaintiff's reliance on just one method of proving his prima facie case – that he was qualified for the promotion – is unsuccessful.

Plaintiff erroneously claims that he met one of the qualifications for promotion – currency in his field. See 8 D.C.M.R. § 1431.1. Plaintiff claims he was well current in his field simply by referring to the journalistic writings listed in his promotion application. (Opp. 15, Pl. Exh. 1, 2, 3. [1]) This is an insufficient showing. As detailed in defendant's motion, plaintiff's application did not show that he had kept current with the important changes in the journalism field, including the new developments in technology and the growing emphasis on legal and ethical issues. (Exh. G; Exh. E, Petty Depo. 86 ln.19 – 87 ln.12). Plaintiff does not suggest any of his journalistic writings demonstrate that he was current with such important changes. As further detailed in defendant's motion, plaintiff's application did not show that he had upgraded the journalism curriculum to reflect these current developments. (Exh. E, Petty Depo. 87-89). Plaintiff does not dispute that the journalism curriculum required substantial updating – including a new course on ethics – and that plaintiff never submitted syllabi to the Curriculum Committee so that the new courses could be added to the regular curriculum. (Exh. O, Elam Depo. 238-41, 245-46; 265-68). Because of his lack of currency in his field, plaintiff was not qualified for promotion.

Plaintiff also fails to show he met another qualification for promotion – evidence of scholarly writing or research. See 8 D.C.M.R. § 1431.1. Once again, plaintiff contends that he met this qualification by reference to his "prolific" writings and "numerous" newspaper articles. (Opp. 15, 16). Plaintiff does not identify, though, any writing that researched or analyzed issues in the field of journalism. (Exh. A, Elam Depo. 286-87; Exh. B, Reuben-Cooke Depo. 54 ln.3-

---

[1] Plaintiff's Exhibit 3 is not competent evidence to oppose a summary judgment motion. The exhibit itself was not submitted or considered with plaintiff's promotion application but was apparently created after the fact; nor is there a declaration as to the truth or accuracy of the information contained in the exhibit.

20, 105 ln.7 – 107 ln. 16; Exh. G). He also admittedly had no scholarly works published in a professional journal. (Id.) Even considering his newspaper articles, plaintiff's application indicates no awards or critical acclaim for those articles. (Exh. G; Exh. E, Petty Depo. 120-21). Plaintiff points to an allegedly "prestigious" Journalism Special Educator Award in 1994, but in fact this was merely an attendance certificate given to every participant in a one-week workshop. (Exh. O, Elam Depo. 14-19). Plaintiff also highlights an "Excellence in Teaching Award" from an elementary school principal. (Exh. O, Elam Depo. 156-57). Neither of these awards was based on critical acclaim for his writings by professional writers in his field. Due to his lack of scholarly writings or research, plaintiff was not qualified for promotion.

Because plaintiff has not shown he was qualified for the promotion, plaintiff has not established a prima facie case of discrimination based on his Asian Indian origin.

B. <u>Plaintiff Cannot Establish a Prima Facie Case That He Was Denied Promotion Because of His Age</u>.

Plaintiff does not even attempt to show a prima facie case of age discrimination. As the defendant's motion argued, an additional reason precluding a prima facie case of age discrimination was that the promotional decision-makers did not even know the ages of the applicants. (Mot. 17). Plaintiff's opposition does not dispute this fact. The only protected class in which plaintiff claims membership is as an Asian Indian. (Opp. 13). Accordingly, defendant is entitled to summary judgment on plaintiff's age discrimination claims.

    C.    <u>Plaintiff Cannot Rebut Defendant's Legitimate, Non-Discriminatory Reasons for His Non-Promotion.</u>

Plaintiff fails to rebut the defendant's legitimate non-discriminatory reasons for denying plaintiff's promotion. These reasons are again: (1) lack of evidence that plaintiff kept current with major changes in the field of journalism; and (2) lack of scholarly research or writing or of writing awards or critical acclaim by other professional writers. As argued in the prior section regarding plaintiff's prima facie case, plaintiff is unable to show that he was qualified for the promotion given these two broad deficiencies. Even assuming <u>arguendo</u> that plaintiff can show that he was qualified for purposes of a prima facie case, he cannot in the end show that these reasons were pretext for discrimination.

Plaintiff improperly tries to rebut these reasons by presenting his own perception of his qualifications. The question, though, is not whether plaintiff was arguably qualified for the promotion. Rather, plaintiff must show that the decision-makers' proffered reasons were not their "true reasons" and that the decision-makers did not legitimately believe in their own reported assessment of his qualifications. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). To meet this high burden, plaintiff must prove that the defendant's reasons were "unworthy of credence." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 142 (2000). Or, as plaintiff himself states at one point, he must prove that the defendant made an error in assessing his qualifications that was "too obvious to be unintentional." <u>Fischbach v. District of Columbia Dep't of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996). (Opp. 26). This plaintiff cannot do, particularly in an academic setting where courts have been especially reluctant to "pass on the merits of a candidate's scholarship." <u>Okruhlik v. University of Arkansas</u>, 395 F.3d 872, 879 (8th Cir. 2005). Accordingly, even if plaintiff can get past a prima

facie case, his qualifications are not so obvious that they ultimately rebut defendant's explanation.

Plaintiff also vainly attempts to show pretext by contending that Professor Ormond "was promoted to Full Professor even though she did not even apply when Associate Professor Elam and the other candidates did." (Opp. 20-21). The undisputed facts show nothing suspect about this. Professor Ormond applied two years earlier for promotion to Full Professor and was recommended for promotion by Acting Dean Minus, but her promotion was held up because there was no funding for promotions at the time. (Exh. E, Petty Depo. 75-77; Exh. J). Plaintiff insinuates that this violated the terms of the Fourth Master Agreement but offers no explanation. (Opp. 21). The only term of the Agreement to which plaintiff might be referring is that a candidate for promotion must apply by a certain deadline – which Professor Ormond easily met (by two years in fact). (Pl. Exh. 14 at 3.)

Plaintiff also alleges pretext by misleadingly asserting that Dean Petty "re-ranked the applicants without justification." (Opp. 21). Dean Petty simply conducted her own evaluation of the candidates' applications and provided her recommendations to the Provost, which is the process provided for in the Fourth Master Agreement. (Exh. N at p. 35 ¶ 7). With regard to her evaluation of Professor Elam, her negative recommendation differed from that of the Departmental and College Committees that first considered plaintiff's application. Plaintiff, however, does not deny that the Departmental Committee, which consists of faculty from an applicant's own Department, recommends virtually all applicants for promotion as a matter of collegiality. (Exh. E, Petty Depo. 61 ln.13 – 62 ln.14). Plaintiff also does not dispute that the College Committee reaches its recommendations using a point system based on the quantity of an applicant's accomplishments with little or no critical judgment as to the quality of those

5

accomplishments. (Exh. E, Petty Depo. 63 ln.21 – 65 ln.20). In any event, the Dean was entitled to make her own recommendation, which the Provost adopted after her review of plaintiff's application. Plaintiff's pretext argument here is really just the same argument as before that he was well qualified for the position. As before, though, plaintiff's evidence is still insufficient to show that Dean Petty's reasons for recommending against plaintiff's promotion were so flawed that she could not have truly believed in those reasons.

Plaintiff lastly asserts pretext by claiming that the university discriminated against him regarding another promotion in 1979. While he produces a settlement agreement in this long ago matter, (Pl. Exh. 5), a settlement is not admissible evidence of liability, Fed. R. Evid. 408, and the agreement by its own terms "does not constitute an admission" of discrimination. (Pl. Exh. 5). This alleged past discrimination is also inadmissible because it is too remote in time, occurring over twenty years prior to the alleged discriminatory non-promotion in this case. See Travis v. Board of Regents, 122 F.3d 259, 264 (5th Cir. 1997) (holding that a discriminatory comment "made more than seven years before the disputed employment decisions . . . has no evidentiary force"); Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 112 (3d Cir. 1991) (holding that evidence of alleged harassment ten years prior to the events in suit "was improperly admitted because it was too distant in time"). Evidence of such past discrimination would also be barred because it involved an entirely different set of decision-makers. See Saulsberry v. St. Mary's Univ., 381 F.3d 862, 868 (8th Cir. 2003) (affirming trial court's exclusion of race-based comments because "comments were made by non-decisionmakers"); Swanson v. Leggett & Platt, 154 F.3d 730, 733 (7th Cir. 1998) ("Only evidence on the attitudes of the employees involved in the decision to fire the plaintiffs is relevant."); Schrand v. Federal Pacific Elec. Co.,

851 F.2d 152, 155-57 (6th Cir. 1988) (reversible error to admit allegedly discriminatory statement made by manager who was not involved in the decision to terminate plaintiffs).

For all these reasons, plaintiff cannot show that defendant's reasons for plaintiff's non-promotion were pretext for discrimination.

D.   The Statute of Limitations Bars Plaintiff's Hostile Work Environment Claim.

Plaintiff hardly contests that his hostile work environment claim is barred by the statute of limitations. His opposition simply cites a general proposition from National Railway Passenger Corp. v. Morgan, 531 U.S. 101, 122 (2002), also quoted in defendant's motion, that a hostile work environment claim will not be time barred "so long as all acts are part of the same unlawful employment practice and at least one acts falls within the time period." (Opp. 27). Plaintiff, though, ignores defendant's specific argument that the hostile work environment alleged in this case ended in 1999. (Mot. 22). Any alleged harassment occurring after 1999 was not a harassing act but merely a lingering effect of a decision or act that occurred before. See Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2169 (2007) (rejecting as time barred a claim based on employer conduct within the charging period that "gave present effect to discriminatory conduct outside of that period.") Defendant alternatively argued that any alleged act of harassment truly arising within the limitations period (beginning in May 2002) would not be part of the same employment practice or period of harassment that culminated in 1999. (Mot. 23). Plaintiff likewise offers no specific opposition to this alternative argument. Because plaintiff does not meaningfully dispute that his hostile work environment allegations center on an alleged practice that ceased by 1999, the statute of limitations bars his hostile work environment claims in whole or in part.

7

  E. <u>Plaintiff's Evidence Is Insufficient to Show That He Suffered a Hostile Work Environment</u>.

  Plaintiff practically concedes the merits of his hostile work environment claim as well. His opposition is simply a factual recitation of specific incidents that he believes constitute harassment. Oftentimes, plaintiff's opposition does not cite to record evidence but to the allegations in his complaint. Absent from this recitation of incidents is the slightest indication or even allegation that the alleged hostility was based on plaintiff's Asian Indian origin. Plaintiff seems unaware that anti-discrimination laws do not prohibit all workplace harassment, only harassment motivated by a discriminatory criterion. <u>Stewart v. Evans</u>, 275 F.3d 1126, 1133 (D.C. Cir. 2002). Plaintiff also makes no attempt to rebut the legitimate explanations that defendant has shown for the conduct plaintiff deems hostile. (Mot. 26). Plaintiff offers no argument against defendant's alternative position that these incidents fail to rise to the level of severe and pervasive conduct. (Mot. 26-28). On all these grounds, defendant is entitled to summary judgment on plaintiff's claim of hostile work environment.

II. CONCLUSION

  For the reasons stated in defendant's original motion and this reply memorandum, defendant Board of Trustees of the University of the District of Columbia respectfully requests that this Court enter summary judgment in defendant's favor on all claims in this matter.

            Respectfully submitted,

            LINDA SINGER
            Attorney General for the District of Columbia

            GEORGE C. VALENTINE
            Deputy Attorney General, Civil Litigation Division

/s/ Phillip A. Lattimore, III /s/
PHILLIP A. LATTIMORE, III [422968]
Chief, General Litigation Section III


/s/ Carl J. Schifferle /s/
CARL J. SCHIFFERLE [463491]
Assistant Attorney General
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6624
(202) 727-3625 (fax)
Email:  carl.schifferle@dc.gov

9